UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

RICKY C. DAVIS,

    Plaintiff,

v.

CAROLINE B. LAPISH, et al.,

    Defendants.

No. 3:17cv898 (MPS)

**RULING ON MOTION TO DISMISS**

Pro se plaintiff Ricky C. Davis brings this defamation action against the defendants, Caroline Lapish and her employer, the law firm of Adler Pollock & Sheehan P.C.[1] Pending before the court is the defendants' motion to dismiss the complaint. (ECF 36.) The motion is granted.

I.    Background

This case arises from an earlier lawsuit the plaintiff filed against Home Depot in which he alleged personal injury. Davis v. Home Depot, No. 3:16CV8(MPS). During the litigation of that case, the court scheduled a settlement conference to be conducted by a magistrate judge. (ECF 52.) In March 2017, the plaintiff, the plaintiff's wife, and the plaintiff's son attended a settlement conference at the courthouse. Ms. Lapish, an attorney who represented Home Depot, and the magistrate judge also were present. During the settlement conference, Ms. Lapish stated that there was medical evidence that the plaintiff had consumed cocaine. On April 14, 2017, the parties filed

---

[1]The plaintiff initially named Home Depot as a defendant. The court dismissed with prejudice all claims as to Home Depot. See ECF 10 at 6.

a stipulation of dismissal and the court accordingly dismissed the case with prejudice.[2] (ECF 63, 64.)

Thereafter, the plaintiff filed this action against Ms. Lapish and Adler Pollock & Sheehan P.C. alleging defamation arising from Ms. Lapish's remarks during the settlement conference.

II.  Discussion

The defendants argue that the complaint should be dismissed because the alleged statements are subject to the litigation privilege under Connecticut state law. The allegedly defamatory statements, the defendants maintain, were "made in the context of a judicial proceeding and are, therefore, absolutely privileged." (ECF 34 at 8.)

Under Connecticut law, "absolute immunity," also known as the litigation privilege, "bars defamation claims that arise from statements made in the course of judicial or quasi-judicial hearings." Rioux v. Barry, 283 Conn. 338, 344 (2007). "[C]ommunications uttered or published in the course of judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." Petyan v. Ellis, 200 Conn. 243, 245–46 (1986) (internal quotation marks and citation omitted); see also Mozzochi v. Beck, 204 Conn. 490, 494 (1987)("Because litigants cannot have [unfettered access to the courts] without being assured of the unrestricted and undivided loyalty of their own attorneys, we have afforded to attorneys, as officers of the court, absolute immunity from liability for allegedly defamatory communications in the course of judicial proceedings."). "The privilege extends beyond statements made during a judicial proceeding to 'preparatory communications that

---

[2]The court subsequently denied the plaintiff's attempts to reopen the case pursuant to Fed. R. Civ. P. 60. See ECF 85.

may be directed to the goal of the proceeding.'" Tyler v. Tatoian, 164 Conn. App. 82, 88 (2016) (quoting Hopkins v. O'Connor, 282 Conn. 821, 832 (2007)); see also Alexandru v. Dowd, 79 Conn. App. 434, 438 (2003)("The privilege applies also to statements made in pleadings or other documents prepared in connection with a court proceeding."); Carney v. Amendola, No. CV106003738, 2014 WL 2853836, at *8 (Conn. Super. Ct. May 14, 2014) (noting that "[t]he privilege extends to statements made preliminary to a judicial proceeding" and finding that statements by lawyer aimed at soliciting client and in contemplation of litigation were privileged). "Its application serves to avoid chilling the vigorous advocacy expected in an adversarial system of justice by barring retaliatory suits by third parties against counsel for their communications and actions made in the course of the representation." Kramer v. Sierra, No. HHDCV186098422S, 2019 WL 4322463, at *2 (Conn. Super. Ct. Aug. 19, 2019). "The privilege . . . is based upon a public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." McManus v. Sweeney, 78 Conn. App. 327, 335 (2003). It "protects the rights of clients who should not be imperiled by subjecting their legal advisors to the constant fear of lawsuits arising out of their conduct in the course of legal representation. The logic is that an attorney preparing for litigation must not be hobbled by the fear of reprisal by actions for defamation . . . which may tend to lessen [counsel's] efforts on behalf of clients." Simms v. Seaman, 308 Conn. 523, 535 (2013).

Attorney Lapish made the alleged comments during the settlement conference in the context of informing the judge of the defendant's position as to the medical evidence that the defendant intended to offer should the case proceed to trial. (ECF 41, Pl's Oppn at 8.) Although there does not appear to be any Connecticut appellate authority addressing specifically whether the privilege applies to statements made to a judge or mediator during a settlement conference, I

3

predict that the Connecticut Supreme Court, if faced with such facts, would conclude that the privilege applies. Travelers Ins. Co. v. 633 Third Assocs., 14 F.3d 114, 118 (2d Cir. 1994)("Federal courts sitting in diversity cases will, of course, apply the substantive law of the forum State on outcome determinative issues . . . . Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity.") (internal citations omitted).

Statements a lawyer makes to a judge during a mediation about the anticipated evidence at trial are "pertinent to the subject of the controversy," Peytan, 200 Conn. at 245-46, and protecting such statements furthers the "public policy of securing to attorneys as officers of the court the utmost freedom in their efforts to secure justice for their clients." McManus, 78 Conn. App. at 335. Two Connecticut Superior Court judges have reached a similar conclusion. In Kenneson v. Eggert, No. CV145016613, 2018 WL 4778386, at *3 (Conn. Super. Ct. Sept. 13, 2018)(Brazzel-Massaro, J), the plaintiff brought suit against the attorney who represented the defendant in an earlier action the plaintiff had commenced. At issue were the attorney's communications made during settlement discussions in the earlier case. The court concluded that the plaintiff's lawsuit was barred because "the settlement discussions [in the earlier case] were part of a judicial proceeding and thus fall within the claims that are protected by the absolute litigation privilege." Id. at *4. Similarly, in Ghio v. Liberty Ins. Underwriters, Inc., No. X07HHDCV196104759S, 2019 WL 2142830, at *1 (Conn. Super. Ct. Apr. 12, 2019), the plaintiffs sued the attorneys who represented the defendants in an earlier case regarding their communications during settlement negotiations. The court (Moukawsher, J.) observed that Connecticut "courts have repeatedly rejected lawsuits about communications and behavior in connection with court legal proceedings in general and concerning lawyers in particular" and reasoned that the litigation privilege was

necessary to protect settlement negotiations. 2019 WL 2142830, at *1. The court held that the communications at issue were "part of a judicial proceeding" and that the defendant attorneys "are absolutely immune from being sued for them." Id. at *3. As in Kenneson and Ghio, the litigation privilege bars the plaintiff's defamation claims in the instant case. Because I so conclude, I need not address the defendants' other arguments.

III. Conclusion

For the reasons set forth above, the defendants' motion to dismiss (ECF 36) is GRANTED.

                                                IT IS SO ORDERED.

                                                _____/s/_____
                                                Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
                 November 13, 2019